IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FUJIFILM SONOSITE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-309 (JPM) |
| | ) | |
| BUTTERFLY NETWORK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
SUPPLEMENTAL INFRINGEMENT CONTENTIONS**

OF COUNSEL:

Robert L. Maier
Jennifer C. Tempesta
Margaret M. Welsh
Pallavi Mathur
Eric J. Faragi
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112
(212) 408-2500

April 21, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Plaintiff FUJIFILM Sonosite, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    Preliminary Statement..............................................................................................1

II.   Factual Background .................................................................................................2

III.  Legal Principles ......................................................................................................3

IV.   Argument ................................................................................................................4

     A.    The Case Butterfly Cites Does Not Support the Requested Relief........................4

     B.    The Local Patent Rules and Scheduling Order are Inconsistent with the Relief Butterfly Seeks.....................................................................................................5

     C.    Applicable Authority Also Contradicts Butterfly's Position Regarding the Sufficiency of the Contentions...............................................................................8

     D.    Butterfly's Complaints regarding Individual Contentions Lack Merit.................13

          1.    The '157 patent contentions comply with LPR 3.1 .................................13

          2.    The '985 patent contentions comply with LPR 3.1 .................................14

          3.    The '168 patent contentions comply with LPR 3.1 .................................15

          4.    The '108 patent contentions comply with LPR 3.1 .................................17

          5.    The '822 patent contentions comply with LPR 3.1 .................................18

          6.    The '981 patent contentions comply with LPR 3.1 .................................18

          7.    The '050 patent contentions comply with LPR 3.1 .................................19

          8.    The contentions regarding the Doctrine of Equivalents (DOE) comply with LPR 3.1 ...........................................................................................19

V.    Conclusion ...........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
359 F. Supp. 2d 558 (E.D. Tex. 2005) ..................................................................................10

*B.E. Tech., LLC v. Samsung Elecs. Am., Inc.*,
No. 12-cv-2825, D.I. 63 (W.D. Tenn. Oct. 4, 2013) ............................................................8, 9

*Bender v. Adv. Micro Devices, Inc.*,
No. 09-cv-1149, 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) (*see* Mot. ) ...............................10

*Constellation Designs, LLC v. LG Electronics, Inc. et al.*,
No. 2:21-cv-00448 (E.D. Tex. June 8, 2022) ................................................................7, 11, 12

*DCG Sys. v. Checkpoint Techs, LLC*,
No. 11-03792, 2012 WL 1309161 (N.D. Cal April 16, 2012) ..........................................4, 5, 6

*Finjan, Inc. v. SonicWall, Inc.*,
No. 17-cv-4467, 2019 WL 2077849 (N.D. Cal. May 10, 2019) ..............................................10

*Genentech, Inc. v. Amgen, Inc.*,
289 F.3d 761 (Fed. Cir. 2002) ..................................................................................................5

*IP Co., LLC v. Oncor Elec. Delivery Co.*,
No. 2:09-cv-37, 2009 WL 10677796 (E.D. Tex. Dec. 8, 2009) ..............................................10

*Jaipuria v. Linkedin Corp.*,
No. 6:11-cv-66, 2013 WL 12146741 (E.D. Tex. Mar. 27, 2013) ............................................10

*Kajeet, Inc. v. McAfee Corp.*,
No. 21-cv-5 (D. Del. Nov. 22, 2021) .....................................................................................10

*Multilayer Stretch Cling Film Holdings, Inc. v. MSC Mktg. & Tech., Inc.*,
No. 2:12-cv-02112-JPM, 2013 WL 12149633 (W.D. Tenn. July 23, 2013)
(McCalla, C.J.) ...................................................................................................................3, 11

*Realtime Data, LLC v. Packeteer, Inc.*,
No: 6:08-cv-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ..................................3, 11, 12

*RightQuestion, LLC v. Samsung Electronics Co., Ltd. et al.*,
No. 2:21-cv-00238 (E.D. Tex. April 14, 2022) ..................................................................8, 11

*Team Worldwide Corporation v. Academy, Ltd. d/b/a Academy Sports & Outdoors*,
No. 2:19-cv-00092, 2020 WL 4601635 (E.D. Tex. Aug. 11, 2022) ...............................2, 7, 12

*Theranos, Inc. v. Fuisz Pharma LLC*,
No. 11-cv-5236, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012) ...............................................9

*Uniloc 2017, LLC v. Apple Inc.*,
No. 3:19-cv-01697 (N.D. Cal. Dec. 13, 2019).........................................................................12

*Wapp Tech Limited Partnership et al v. Micro Focus International PLC*,
No. 4:18-cv-00469 (E.D. Tex. July 2, 2020) .........................................................................10

*Woods v. DeAngelo Marine Exhaust, Inc.*,
692 F.3d 1272, 1280 (Fed. Cir. 2012).....................................................................................4

OTHER AUTHORITIES

F.R.C.P. 26.......................................................................................................................4, 5

W.D. Tenn. Local Patent Rule 3.1 ............................................................................... *passim*

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | March 30, 2023 Hearing Transcript |
| 2 | Butterfly's Non-infringement Contentions (NICs) dated Nov. 23, 2022 |
| 3 | Sonosite letter dated Dec. 2, 2022 to Butterfly re NICs |
| 4 | Butterfly letter date Dec. 9, 2022 to Sonosite re infringement contentions |
| 5 | Sonosite email dated March 21, 2023 to Butterfly re lack of caselaw |
| 6 | *RightQuestion, LLC v. Samsung Electronics Co., Ltd. et al.*, No. 2:21-cv-00238 (E.D. Tex. April 14, 2022) |
| 7 | *Constellation Designs, LLC v. LG Electronics, Inc. et al.*, No. 2:21-cv-00448 (E.D. Tex. June 8, 2022) |
| 8 | *Uniloc 2017, LLC v. Apple Inc.*, No. 3:19-cv-01697 (N.D. Cal. Dec. 13, 2019) |
| 9 | *B.E. Tech., LLC v. Samsung Elecs. Am., Inc.*, No. 12-cv-2825, D.I. 63 (W.D. Tenn. Oct. 4, 2013) |
| 10 | Sonosite Initial Infringement Contentions dated October 26, 2022 (cover pleading) |
| 11 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. A - 157 chart) |
| 12 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. B - 985 chart) |
| 13 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. C - 168 chart) |
| 14 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. D - 108 chart) |
| 15 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. E - 822 chart) |
| 16 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. F - 981 chart) |
| 17 | Sonosite Initial Infringement Contentions dated October 26, 2022 (Ex. G - 050 chart) |
| 18 | Infringement contentions at issue in *Theranos, Inc. v. Fuisz Pharma LLC* |
| 19 | *Wapp Tech Limited Partnership et al v. Micro Focus International PLC*, No. 4:18-cv-00469 (E.D. Tex. July 2, 2020) |

## I.    Preliminary Statement

Defendant Butterfly Network, Inc. ("Butterfly") asks this Court to grant extraordinary relief for which it has provided no authority—i.e., an order requiring interim supplements to Plaintiff FUJIFILM Sonosite, Inc.'s ("Sonosite's") infringement contentions simply because Butterfly expected them after producing some technical materials.  There is no date in the scheduling order (D.I. 26) for an interim supplement, and no such requirement in the Local Patent Rules.  Sonosite has repeatedly requested that Butterfly identify case law in support of the relief it seeks; despite those repeated requests, and now the Court's indication during the March 30, 2023 telephone conference that the Court "would need clear reference to authorities" in support of the requested relief (Ex. 1, Tr. at 30:21-11), Butterfly still is unable to identify such a case.  Butterfly's motion should be denied for that reason alone.

The remainder of Butterfly's motion is littered with inaccuracies, and ultimately appears to be an effort to shift the issue, from the question of whether interim contentions are required, to whether Sonosite's initial infringement contentions were sufficient in the first place.  But Butterfly did not initially take issue with the sufficiency of Sonosite's infringement contentions.  It was only after it became clear that there is no authority in support of Butterfly's request for interim infringement contentions, that Butterfly then pivoted to alleging that Sonosite's 343-page infringement contentions were somehow deficient from the beginning.

But Butterfly failed to seek relief during the five months following service of Sonosite's infringement contentions—that delay alone being sufficient basis to deny the motion.  And, critically, during that time, Butterfly was able to serve non-infringement contentions, serve invalidity contentions, identify claim terms for construction, produce technical materials regarding the accused products, and prepare and file an opening claim construction brief—all of which evidence that Sonosite's initial infringement contentions were sufficient, and served their purpose

1

of framing the issues for orderly discovery. *See Team Worldwide Corporation v. Academy, Ltd. d/b/a Academy Sports & Outdoors*, No. 2:19-cv-00092, 2020 WL 4601635, *2 (E.D. Tex. Aug. 11, 2022) ("Infringement contentions . . . are merely designed to streamline the discovery process.").

Ultimately, Butterfly's request is unsupported by the case law and unjustified in light of Sonosite's highly detailed initial infringement contentions. It should be denied.[1]

## II.    Factual Background

On September 13, 2022, the parties jointly submitted a proposed scheduling order that (1) adopted the Local Patent Rules for the Western District of Tennessee to govern this case, and (2) consistent with those rules, included a deadline for initial infringement contentions and a deadline for final infringement contentions, and no other deadlines regarding, or discussion of, other infringement contentions. D.I. 22. On October 26, 2022, Sonosite served infringement contentions that complied with W.D. Tenn. LPR 3.1.[2] Butterfly did not immediately raise any objection to the contentions; instead, Butterfly served responsive non-infringement contentions ("NICs") on November 23, 2022. Ex. 2. In response, on December 2, 2022, Sonosite advised Butterfly that Butterfly's non-infringement contentions were deficient, because those contentions repeated nearly identical text for every claim limitation. Ex. 3. Only then—on December 9, and in response to Sonosite's letter—did Butterfly for the first time allege there were any deficiencies

---

[1] As Sonosite previewed during the March 30, 2023 telephonic conference, Sonosite does intend to serve interim supplements where appropriate, to address new products revealed during discovery. As one example, Sonosite intends to supplement its '822 and '050 contentions in the coming weeks to provide contentions for two redesigned product elements that Sonosite has learned about during fact discovery to this point. However, Sonosite continues to disagree that wholesale interim supplements to the entirety of the contentions are necessary merely because Butterfly has produced some technical documents.

[2] All citations to "LPR" hereafter refer to the Local Patent Rules for the Western District of Tennessee, which control in this action.

in Sonosite's infringement contentions.  Ex. 4.

Since Sonosite served its infringement contentions, Butterfly was able to serve its NICs (D.I. 49), serve invalidity contentions on January 6, 2023 (D.I. 52), identify claim terms for construction to Sonosite starting on January 12, 2023 (D.I. 55), and produce technical materials regarding the accused products, and now prepare and file its opening claim construction brief on April 18, 2023 (D.I. 72).  Five months after it received Sonosite's initial infringement contentions, Butterfly filed the instant motion.

## III.    Legal Principles

"Infringement contentions are not intended to require a party to set forth a prima facie case of infringement and evidence in support thereof."  *Multilayer Stretch Cling Film Holdings, Inc. v. MSC Mktg. & Tech., Inc.*, No. 2:12-cv-02112-JPM, 2013 WL 12149633, at *1 (W.D. Tenn. July 23, 2013) (McCalla, C.J.) (denying motion to compel supplemental infringement contentions) (quoting *Realtime Data, LLC v. Packeteer, Inc.*, No: 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009)).  "While infringement contentions must be reasonably precise and detailed based on all publicly available information in order to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement because infringement contentions are not meant to provide a forum for litigation of the substantive issue."  *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) (internal citation omitted).    Since the "[Western District of Tennessee's] Local Patent Rules are similar to those of both the United States District Courts for the Northern District of California and the Eastern District of Texas," caselaw from those districts interpreting their local patent rules are relevant authority.  *See Multilayer Stretch Cling Film*, 2013 WL 12149633, at *1.

3

## IV.     Argument

### A. The Case Butterfly Cites Does Not Support the Requested Relief.

Despite requests from Sonosite and the Court, Butterfly has not identified a single case that would justify the relief it seeks. *See, e.g.*, Ex. 5 (Email dated March 21, 2023 from Sonosite to Butterfly); Ex. 1 (Hearing Tr.) at 19. Butterfly now relies on *Woods v. DeAngelo*, and Butterfly's description of that case is inaccurate. The relevant paragraph from Butterfly's brief is reproduced below:

> Under W.D. Tenn. LPR 2.3, Federal Rule 26(e) applies to supplementing contentions. It states that a party "must supplement or correct its disclosure … in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect." Fed. R. Civ. P. 26(e). "Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, [infringement contentions] be corrected or supplemented to reflect those changes." *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012).

Mot. at 6. Despite the bracketed quote from *Woods* in Butterfly's brief, *Woods* does not say or imply that "infringement contentions" must be supplemented "as theories mature and as the relevance of various items of evidence changes." Rather, *Woods* deals with a defendant's failure to disclose a prior art reference until less than 30 days prior to trial, in response to a plaintiff's contention interrogatory, in a case and district (S.D. Fla.) in which there were no local patent rules.

Yet here, the local patent rules ***expressly*** supplant contention interrogatories. *See* LPR 2.3(b). And those rules specifically provide two dates related to infringement contentions—a date for initial infringement contentions, and a date for final infringement contentions. They do not include a date in between for supplemental infringement contentions. There are many good, practical reasons that courts across the country, having experience in handling patent cases, settled on the orderly and predictable process set out in local patent rules like those implemented in the

4

Western District of Tennessee and which govern this case, and there is no good reason to deviate from that time-tested approach. *See DCG Sys. v. Checkpoint Techs, LLC*, No. 11-03792, 2012 WL 1309161, at *2 (N.D. Cal April 16, 2012) (explaining that local patent rules "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute"); *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) ("[The Federal Circuit] defers to the district court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines.").

While Rule 26(e)(1)(A) applies to infringement contentions under LPR 2.3, Rule 26(e)(1)(A) only requires a supplement when "in some material respect the disclosure or response is *incomplete or incorrect*, ***and*** if the additional or corrective *information has not otherwise been made known to the other parties* during the discovery process or in writing."[3]  As explained herein in section IV.D., Sonosite submits that its contentions are correct.  But even if they were not, it would be extraordinarily difficult for Butterfly to satisfy the second prong of Rule 26(e)(1)(A) here to would trigger any duty by Sonosite to supplement, ***because Butterfly cannot credibly say it does not know how its own products work***.

**B. The Local Patent Rules and Scheduling Order are Inconsistent with the Relief Butterfly Seeks.**

Both the local patent rules and the scheduling order identify two dates for Sonosite to serve infringement contentions: a first date for initial infringement contentions early in the case; and a second date for final infringement contentions after claim construction and some discovery has occurred.  *See* LPR 3.1; LPR 3.8(a); D.I. 26.  There is no date between them on which plaintiff ***must*** supplement because a defendant expected such (*see* Mot. at 1, 3) after producing technical materials.  *See* LPR 3.1; LPR 3.8(a); D.I. 26.  Rather, a plaintiff ***may*** supplement between those

---

[3] All emphasis in this brief is supplied, unless otherwise noted.

dates, to the extent it deems such supplements appropriate.  LPR 3.11 ("Amending and Supplementing Contentions . . . The parties' disclosures and responses *may* be amended or supplemented without leave of Court until the Final Contentions are due . . .").

Here, Sonosite complied with the scheduling order and local patent rules when it served its initial infringement contentions in October of 2022.  Sonosite served highly detailed, ***343-page*** initial infringement contentions.  These include citations to technical materials from the Butterfly website, Butterfly manuals, YouTube instructional videos about the Butterfly products, screenshots of the product, Butterfly technical support and user support documents, white papers published by Butterfly personnel with technical details about the products, a report regarding a tear-down of the products, and other materials.

As can be seen from Exhibits 10-17, Sonosite's infringement allegations are detailed and extensive.  The rules and the schedule simply do not require Sonosite to undertake the significant and costly effort of updating those contentions several times over during the course of discovery.  *See* LPR 3.1; LPR 3.8(a); D.I. 26.  Neither the rules nor scheduling order require Sonosite to serve interim supplemental infringement contentions to "take into account the confidential information" (*see* Mot. at 3) that Butterfly has thus far provided.  *See* LPR 3.1; LPR 3.8(a); D.I. 26.

It is unclear how far Butterfly's new proposed concept of interim infringement contentions would extend: would they be required after each significant document production?; again after source code is reviewed?; yet again after each technical deposition, or after each third party response to a subpoena?  There are many good, practical reasons that courts across the country, after much collective experience handling patent cases, have settled on the orderly and predictable process set out in local patent rules like those implemented in the Western District of Tennessee and which govern this case, and there is no good reason to deviate from that time-tested approach.

*See DCG Sys.*, 2012 WL 1309161, at \*2.

Indeed, the progress of discovery so far confirms that Sonosite's initial infringement contentions comply with the rules and have served their intended purpose, which is to provide sufficient notice of what is accused in order to frame discovery, so the parties can proceed with fact discovery in an orderly manner. *See Team Worldwide Corporation*, 2020 WL 4601635, at \*2, \*4. First, Butterfly was able to respond with non-infringement contentions as required under the rules. D.I. 49. Second, Butterfly also had sufficient information to prepare and serve invalidity contentions. D.I. 52. Third, Butterfly also had sufficient information to identify claim terms for construction (D.I. 55), and to file its opening claim construction brief (D.I. 72). And finally, perhaps most germane, Butterfly was able to perfectly understand what products and features are accused of infringement in the case. Butterfly is producing documents, samples, and source code. Thus, Sonosite's infringement contentions are serving their purpose—adequately framing the issues for discovery, so that the parties can proceed in an orderly process through discovery.

Yet Butterfly still wants more. In reality, no amount of supplementing will resolve Butterfly's concern, because it erroneously believes that Sonosite must *prove* its infringement case in its infringement contentions, rather than simply place Butterfly on *notice* of Sonosite's infringement allegations. This mistaken belief is confirmed by statements made on the record by Butterfly during the telephonic hearing on Butterfly's letter request that preceded this motion:

> So instead of having the documentation on our product, they cite a patent publication and they ***cite no evidence in the contentions*** that we actually practice that patent publication, but they cited as evidence for a particular limitation.

Ex. 1 (Hearing Tr.) at 23:21-25. In other words, Butterfly understands what is accused—thus confirming the initial contentions are sufficient—but it does not believe Sonosite has yet adequately proved infringement. Sonosite does not need to prove infringement at this point in

7

time. *See Constellation Designs, LLC*, No. 2:21-cv-00448. Rather, the purpose is simply to put Butterfly on notice. *See id.* That Butterfly disagrees on the merits of the case is not a reason for the Court to compel supplemental contentions. *See RightQuestion, LLC*, No. 2-21-cv-00238, slip op. at 1-2 (attached as Ex. 6).

## C. Applicable Authority Also Contradicts Butterfly's Position Regarding the Sufficiency of the Contentions

Not only does the case law fail to support Butterfly's request for an interim supplement, it also fails to support Butterfly's argument that Sonosite's contentions are deficient. Though Sonosite agrees that "vague and conclusory contentions are inadequate," Butterfly's citation to *B.E. Tech., LLC v. Samsung Elecs. Am., Inc.*, No. 12-cv-2825, D.I. 63 (W.D. Tenn. Oct. 4, 2013) (McCalla, J.) (attached as Ex. 9) for this proposition (*see* Mot. at 6) in unavailing because the facts therein are substantially different than those here.

First, in *B.E. Tech.*, the defendant sent a letter immediately after receiving the initial contentions saying it could not possibly prepare non-infringement contentions based on the little information provided in the initial contentions—i.e., it could not even understand what was accused in that case. *Id.* at 3-4. Defendant then moved to compel. Here, Butterfly served its non-infringement contentions timely, did not complain about sufficiency of the initial infringement contentions before that, and then waited four months after that to file the instant motion. And in that time, Butterfly also served invalidity contentions, identified claim terms for construction, produced technical materials regarding the accused products, and filed an opening claim construction brief. Butterfly surely was on sufficient notice of Sonosite's infringement theories.

Second, in *B.E. Tech.*, the plaintiff "fail[ed] to specifically identify where in *any* of the accused Samsung products most of the limitations of [the asserted patent claim] exist, instead repeating *verbatim* the language of the claim, then stating in conclusory fashion that . . . the accused

products satisfy these limitations." *See id.* at 10 (emphasis in original). Here Sonosite's detailed 343-page contentions go well beyond simply repeating verbatim language of the claim, as they cite to and annotate technical materials including from the Butterfly website, the Butterfly manuals, YouTube instructional videos about the Butterfly products, screenshots of the products, Butterfly technical support and user support documents, white papers published by Butterfly personnel with technical details about the products, a consultant report regarding a tear-down of the products, and other materials. *See generally* Sonosite's Initial Infringement Contentions (attached as Exs. 10-17).

Third, *B.E. Tech.* involved a plethora of different products—"177 products in at least 8 distinct product categories in at least 8 distinct product categories, including televisions, cameras, Blu-Ray Players, home theater systems, media players, personal computers, phones and tablets, along with 'all reasonably similar products and/or services.'" *Id.* at 3-6. Here there is no ambiguity about what Butterfly products are accused of infringement: Sonosite identified specific models of Butterfly products, and it identified the features of those products that infringe. Accordingly, *B.E. Tech.* is not applicable here.

Butterfly cites *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-5236, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012) for the proposition that contentions that include "on information and belief" should be stricken (*see* Mot. at 7, 18). But that case is also distinguishable. First, the *Theranos* court explained, "it does not appear that each limitation in claim 1 has been separately addressed by [patentee]." *Id.* at *5. Second, there the court explained, "a number of responses consist of *nothing more than* a conclusion based 'on information and belief' that something exists or occurs." *Id.*; *see also* Ex. 18 (infringement contentions at issue in *Theranos*). Here, Sonosite addressed each claim limitation in its 343-page contentions and also included details of why each

9

is satisfied, well beyond merely citing "on information and belief."

Butterfly also cites *Bender v. Adv. Micro Devices, Inc.*, No. 09-cv-1149, 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) (*see* Mot. at 6, 10), but that case is likewise inapposite. In *Bender*, the court faulted patentee because he (1) used representative claim charts though patentee had not shown "that the accused products share the same or substantially the same infringing circuitry as any other product"; (2) did not "adequately identified the accused products at issue" and (3) failed "to properly map and link the claim language to each accused product; instead, the locations are repeated for each element of every claim, even where inappropriate." *Id.* at *1, *2. None of those is at issue here.

Citing *Kajeet, Inc. v. McAfee Corp.,* No. 21-cv-5 (D. Del. Nov. 22, 2021),[4] Butterfly baselessly argues Sonosite is "stockpiling evidence and withholding positions." *See* Mot. at 1. Like other of Butterfly's assertions, this is simply not true. Sonosite is proceeding with discovery, is scheduled to review source code beginning on April 24, and doing its diligence in an orderly

---

[4] Beyond that fact that Sonosite is not stockpiling evidence, and that fact discovery here does not close for two months after final infringement contentions are due—thus providing ample time for any follow-up discovery needed—*Kajeet* is also distinguishable for another reason. *Kajeet* was a **pure software case**, in which different rules apply for infringement contentions. In those cases, when a particular rule is invoked by a plaintiff, the software infringement contentions are not due until after defendant makes source code available for inspection. *See, e.g.*, *Wapp Tech Limited Partnership et al v. Micro Focus International PLC*, No. 4:18-cv-00469, slip op. at 2-5 (E.D. Tex. July 2, 2020) (attached as Ex. 19); *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). *Finjan*, *Jaipuria*, and *Oncor*—all pure software cases cited by Butterfly—are distinguishable at least for that same reason. Here, while Sonosite may rely on Butterfly's software, the substantial majority of the claim elements may be shown to be present in Butterfly's products without reference to Butterfly's software. Moreover, *Finjan*, *Jaipuria*, and *Oncor* are additionally distinguishable. In *Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-4467, 2019 WL 2077849 (N.D. Cal. May 10, 2019), the patentee's contentions were found to be deficient because it used "placeholder references to unspecified products, services, or components." None of those are at issue here. *Id.* at *3. In *Jaipuria v. LinkedIn Corp.*, No. 6:11-cv-66, 2013 WL 12146741 (E.D. Tex. Mar. 27, 2013) and in *IP Co., LLC v. Oncor Elec. Delivery Co.*, No. 2:09-cv-37, 2009 WL 10677796 (E.D. Tex. Dec. 8, 2009), the plaintiff in each case merely parroted the claim language in its contentions. *See Jaipuria* at *2; *Oncor* at *1. Sonosite did not do that.

10

manner.  Moreover, unlike in some other schedules, this case schedule has final contentions due followed by two additional months to complete fact discovery.  Butterfly will not have final infringement contentions foisted on it at the last minute without the ability to take further discovery and do whatever is needed.  Again, that Butterfly disagrees with Sonosite's allegations is not a reason to grant its motion.

As this Court has explained, Butterfly is wrong that a patentee must prove its case at the initial infringement contentions stage: "Infringement contentions are not intended to require a party to set forth a prima facie case of infringement and evidence in support thereof."  *See Multilayer Stretch Cling Film*, 2013 WL 12149633, at *2 (*quoting Realtime Data, LLC*, No. 6:08-cv-144, 2009 WL 2590101, at *5).

Moreover, Butterfly is wrong in its attempt to litigate the merits of the infringement case through the instant motion.  Multiple cases reject the approach that Butterfly is taking.  For example, in *RightQuestion, LLC v. Samsung Electronics Co., Ltd. et al.*, No. 2:21-cv-00238 (E.D. Tex. April 14, 2022), in denying a motion to strike infringement contentions, the court explained: "[T]he Court finds Defendants' complaints on the sufficiency of [plaintiff's] contentions essentially amount to non-infringement arguments. [Plaintiff's] contentions put Defendants on sufficient notice of the accused instrumentalities and functionalities."  Slip op. at 1-2 (attached as Ex. 6).  In *Constellation Designs, LLC v. LG Electronics, Inc. et al.*, No. 2:21-cv-00448 (E.D. Tex. June 8, 2022), the court explained the purpose of the contentions is simply to provide notice and to streamline discovery:

> The Rules, however, do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.  Infringement contentions are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process.  In the Court's view, Defendants' Motion boils down to an allegation that Plaintiff's infringement

11

theory is flawed.  That differs from there being insufficient notice under the Local Rules.  This case is in its infancy, and Defendants will be able to test Plaintiff's theory throughout discovery and move for summary judgment in the event that theory is not supported by the facts uncovered during discovery.

*Id.* (internal citations omitted) (attached as Ex. 7).  Similarly, in *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009), the court opined:

While infringement contentions must be reasonably precise and detailed based on all publicly available information in order to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement because infringement contentions are not meant to provide a forum for litigation of the substantive issue.

*Id.*  Further, in *Team Worldwide Corporation v. Academy, Ltd. d/b/a Academy Sports & Outdoors*, 2020 WL 4601635, No. 2:19-cv-00092 (E.D. Tex. Aug. 11, 2020), the court denied a motion by a defendant under similar circumstances and for similar reasons:

Infringement contentions "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." (*Id.* at *2) (internal citations omitted)
…
While there are likely details that need to be developed, these developments will occur throughout discovery and claim construction.  Based on the examples the Court has seen, Plaintiff has sufficiently put Defendants on notice of its infringement theory, and the Court will not resolve the substantive issue of infringement on pre-discovery contentions." (*Id.* at *4).

Even if Sonosite is incorrect about how Butterfly's products operate, that does not render Butterfly's initial infringement contentions deficient.  *See Uniloc 2017, LLC v. Apple Inc.*, No. 3:19-cv-01697, slip op. at 1 (N.D. Cal. Dec. 13, 2019) ("The contentions are sufficient to place [defendant] on reasonable notice of [plaintiff's] theory for relief.  That theory may be inconsistent with the proper claim construction of the patent or with the real-world facts of how [defendant's] devices operate.  But [defendant] cannot say it is in the dark on [plaintiff's] theory of

12

infringement.") (attached as Ex. 8).

Ultimately, the great weight of the applicable authority contradicts the arguments Butterfly makes in its motion, and there is no justification or requirement for any supplement here.

### D. Butterfly's Complaints regarding Individual Contentions Lack Merit

Butterfly's patent-specific complaints are without merit, and, in fact, in many instances evidence exactly why Butterfly's motion should be denied—it knows what is accused here, though it may disagree with those accusations. But, as explained in detail above, that is not the standard.

### 1. The '157 patent contentions comply with LPR 3.1

Butterfly raises several issues with the '157 contentions, which are groundless. Butterfly's first issue deals with the image processing limitations. Mot. at 9. Yet Butterfly ignores that Sonosite's contentions specifically provide an example of the "image processing condition parameters"—"presets," which "are a predefined set of imaging parameter values." Ex. 11 ('157 Infr. Contentions) at 4 (citing a Butterfly manual). Sonosite also explains that "Butterfly's POCUS system includes image processing condition parameters, for example, parameters "optimized for visualizing needles inserted at a 30-45 degree angle." *Id.* at 4 (citing a Butterfly manual). Butterfly's also takes issue with the "information of object" limitation. Here, Butterfly seemingly does not like the word "one" in Sonosite's proposed construction of "one body part." Butterfly complains regarding "parameter memory unit" limitation as well. Here, Butterfly disagrees with Sonosite's position that Butterfly's presets (but not necessarily every single preset) correspond to the "image processing condition parameters" that are being stored with the "information of object." Butterfly's last complaint relates to the "normalization" limitations. Here, Butterfly ignores that Sonosite cites Butterfly's own website, where Butterfly's accused product is shown with a "auto Bladder Volume tool" where "parameters" are "optimized." The paper Sonosite cites also discusses the analysis tool using parameters and specifically states: "information may be used by

the deep learning model *to normalize outputs* of the deep learning to the model of the canonical body portion." Though Butterfly claims that Sonosite merely makes general reference to "deep learning models" (Mot. at 11), Sonosite cites to Butterfly's paper that discusses using the deep learning model to perform normalization, just as alleged in the initial infringement contentions. Moreover, Sonosite also cites to Butterfly's own patent application, in which Sonosite explains:

> Butterfly further describes POCUS systems that include "deep learning models" which *calculate normalization parameters*, e.g., "a set of coordinates", based on "ultrasound data". … "[T]he body type information may be used by the deep learning model to normalize outputs of the deep learning to the model of the canonical body portion."

*See* Ex. 11 ('157 Infr. Contentions) at 55. Sonosite also explains that the "coordinate data" in the cited patent can correspond to "normalization parameters." *Id.* at 56.

Ultimately, while Butterfly may disagree with Sonosite's infringement positions, this does not evidence any deficiency in the initial infringement contentions.

### 2. The '985 patent contentions comply with LPR 3.1

Butterfly's complaints regarding the sufficiency of Sonosite's initial infringement contentions for the '985 patent are also without merit. According to Butterfly, the "'985 Patent is directed to a graphical user interface (GUI) with two control areas and an ultrasound image area. One control area has 'graphical tools' to overlay on the ultrasound image . . ." Mot. at 11-12. Butterfly complains about the "graphical tools" in the claim limitation "a first control area having a number of graphical tools." *Id.* at 12. Yet, Butterfly itself confirms in its brief that Sonosite has indeed identified the first control area at issue, which Butterfly does not seemingly dispute *has graphical tools*: "[Sonosite] apparently identifies a 'first control area' on two different displays, as defined by a red box annotated on each display." *See* Ex. 12 ('985 Infr. Contentions) at 9-10. Thus, Sonosite has "identified where [this limitation] is found" and satisfied LPR 3.1(c).

14

Butterfly now alleges it is unable to determine which of its buttons constitute "graphical tools." That is not the same issue as "where [the claim limitation] is found" under LPR 3.1. Regardless, Butterfly confirms in its brief that it was in fact able to identify the "graphical tools" it complains of: "[Sonosite] does not specify which buttons it believes are or are not graphical tools. . . . [Sonosite] appears have a specific understanding of this claim term for invalidity purposes. For example, *Butterfly identified similar buttons* as '*graphical tools*' in the prior art." Sonosite also pointed out in its contentions (which Butterfly ignores in its brief) other examples of the accused graphical tools: "Butterfly's POCUS system also includes, as shown below, a first control area that has a number of *graphical tools, such as 'M-Mode' and 'Lung Protocol'*, that can be activated by a user. *See* https://www.youtube.com/watch?v=ya-SGgzA8J0 (last accessed Oct. 17, 2022)." *See* Ex. 12 ('985 Infr. Contentions) at 9-10. Thus, Butterfly was able to identify a control area and graphical tools on its accused products from Sonosite's initial contentions.

### 3. The '168 patent contentions comply with LPR 3.1

Butterfly's first complaint regarding the '168 contentions alleges that Sonosite's contentions regarding the battery and how its power is distributed are insufficient. Yet, Butterfly ignores that Sonosite's contentions state: "Butterfly's POCUS system has a battery power source" and the contentions show a figure with a "battery." The contentions also identify Butterfly's instructions on how "To charge the probe." The contentions also explain that because "Butterfly POCUS system *connects to a variety of compatible mobile devices*, each of [them] also includes distributed portions of a battery source" and cites to a Butterfly article. Thus, Butterfly's complaints regarding the "battery" are wrong.

Second, Butterfly argues Sonosite's allegations regarding the "desired . . . weight" claim elements are insufficient. Butterfly ignores that Sonosite's allegations include citations that show Butterfly's accused products meet these limitations. The first of which is Butterfly executive

David Silk explaining how Butterfly's products are optimized and do not suffer from the weight issues of prior art ultrasound equipment: "Where we're truly changing the game is the insights one can get from ultrasound.  Because of size, **weight**, fragility, complexity to operate, ultrasounds are fundamentally underutilized as a tool for diagnostic and procedural support."  *See* Ex. 13 ('168 Infr. Contentions) at 10 (citing https://www.whcbc.org/pulse/putting-an-ultrasound-in-every-doctors-pocket-a-conversation-with-butterfly-networks-david-silk/).  Mr. Silk goes on to say in the same cited article: "The portability of our device and ability to plug it into your phone fit very well with how medicine is practiced in more rural areas."  https://www.whcbc.org/pulse/putting-an-ultrasound-in-every-doctors-pocket-a-conversation-with-butterfly-networks-david-silk/.  Sonosite also cites to a white paper authored by various Butterfly engineers distinguishing the prior art from Butterfly's ultrasound products: "[In the prior art] [t]he number of such cables is often practically limited to a few hundred due to size and **weight constraints**, requiring the device to have an undesirably low channel count (often about 128 and well under 1,000)" as compared to Butterfly's "ultrasound-on-chip (UoC)" solution.  *See* Ex. 13 ('168 Infr. Contentions) at 10, 16.  Thus, Butterfly's complaints regarding the "desired … weight" are meritless.

Finally, Butterfly complains that Sonosite did not identify a digital signal processor (DSP) in the accused products, yet the paper Sonosite cites to in its contentions for this claim element—a white paper authored by Butterfly engineers—right in its Table 1 states that Butterfly's accused product contains an "On-chip DSP."  The infringement contentions explained that the digitized data is "beamform[ed] and further compress[ed]."  *See id.* at 15 (citing the same white paper at 14-15, which also explains: "A configurable elevational column summer adds the decimated data from the rows to beamform and further compress the data for storage and offload. … The SPU coordinates a real-time timing sequencer to load UoC parameters, launch triggers, and offload and

16

process ultrasound data.  Additional processing is architecturally reconfigurable and includes beamforming, compounding, and synthetic aperture imaging capabilities.").  Thus, Butterfly's complaints regarding its digital signal processor and beamformer are without merit.

### 4.    The '108 patent contentions comply with LPR 3.1

Butterfly's allegations that Sonosite did not identify in its infringement contentions for the '108 patent the claimed "beam former," "transducer controller," "digital signal processor," "transmit beam former," "receive beamformer," and "single master clock path" are belied by the citations in Sonosite's infringement contentions themselves.

Butterfly's own website explains that it has "patented on-chip digital micro-beamforming" and "Optimize beamforming."  *See* Ex. 14 ('108 Infr. Contentions) at 6 (citing https://www.butterflynetwork.com/iq).  Sonosite includes various citations for the accused "transducer controller," *including citations to Butterfly's own U.S. Patent*.  Sonosite includes various citations for the accused "digital signal processor," including citations to citations to a Butterfly U.S. Patent application as well as a whitepaper authored by Butterfly engineers showing the accused product contains an "On-chip DSP."  Regarding the "transmit beam former" and "receive beam former, that same cited whitepaper indicates the accused product contains "TX beamforming" and "RX beamforming."  And regarding the "single master clock path," Sonosite cites to the same whitepaper, which shows the "clock," explains that the accused "encoders and decoders allow for serialization at the system clock level for precise waveform delays" and the data is received "on a single clock cycle."

Butterfly also argues that in its own non-infringement contentions ("NICs") it informed Sonosite that Sonosite's infringement contentions for "digital signal processor" "were based on incorrect assumptions."  Mot. at 16.  The words "incorrect" or "assumption," however, do not appear in Butterfly's NICs.  Rather, in Butterfly's NICs for the '108 patent, for claim element 1[d]

17

dealing with the "digital signal processor," Butterfly merely alleged in conclusory fashion that the "Ultrasound-on-Chip in the Accused Products does not include" a digital signal processor, which is belied by Butterfly's own materials (cited in Sonosite's infringement contentions) that say otherwise. Ex. 2 (Butterfly NICs) at claim element 1[d] for the '108 patent (PDF page 106 of 192).

### 5.     The '822 patent contentions comply with LPR 3.1

Butterfly raises two issues regarding the infringement contentions for the '822 patent, each of which lacks merit. First, Butterfly complains regarding the "detecting pixels" step. But Sonosite's initial contentions are based on public information. In those, Sonosite is free to say what "appears" to be the case, based on information available to it at the time they were due. Butterfly does not provide any authority to the contrary. Second, Butterfly complains that Sonosite used to same evidence to show that the "determining . . . pixels" step and "blending pixels" step are both met. Sonosite uses the same image for two claimed steps, because the final image indicated is clearly a result of mixing two images which step naturally comprises "determining a mask" and "blending pixels." *See* Ex. 15 ('822 Infr. Contentions) at 11, 13.

### 6.     The '981 patent contentions comply with LPR 3.1

Butterfly's complaints regarding the '981 patent focus on the claimed adjustment circuit and control circuit, and each is without merit. In support of its contentions, Sonosite cited to a Samsung patent, which shows how certain Samsung display technology works. Sonosite also specifically explained that certain products *must* use certain circuitry based on their output. *See, e.g.*, Ex. 16 ('981 Infr. Contentions) at 9, 11. Sonosite is permitted to make such arguments, and Butterfly cites no authority to the contrary. Butterfly complains that Sonosite has not yet subpoenaed certain third parties, but neither has Butterfly—discovery is open and ongoing. Moreover, Sonosite also notes that it served discovery requests on Butterfly for this same information, and Butterfly responded that it would "produce non-privileged, responsive documents

18

sufficient to show the operation of the accused features of the Accused Products, to the extent such documents exist, are in Butterfly's possession, custody, or control, and are found upon a reasonable search, and in accordance with the Scheduling Order." But to this point Butterfly has failed to provide or identify sufficient information, and Butterfly is in the better position to get (or at the very least, ask for) that information, because it has partnered with these companies.

### 7.    The '050 patent contentions comply with LPR 3.1

Regarding the '050 infringement contentions, Butterfly cannot reasonably contend that it does not know what the accused "body" is, when Sonosite pointed to the "first surface" and the "second surface," of said "body." *See* Ex. 17 ('050 Infr. Contentions) at 2, 3, 4, 5. But like with other patents, Butterfly's real issue is that it disagrees with Sonosite's infringement arguments on the merits, not that it lacks notice of them. This is confirmed by the following quotation from Butterfly's brief: "But there is no *single* 'upper' surface, and also no *single* 'surface of the blue plastic component contacting the black case,' which [Sonosite] identifies with a red arrow pointing to a spot on the black case." Mot. at 20 (emphasis in original). In other words, Butterfly seemingly believes that a "surface" must be flat. This goes to interpretation and application of the claim limitations against the accused product, not to notice of Sonosite's theories.

Butterfly did not explain in its brief what its complaints are with respect to the claimed "shoulder" and the claimed "notch" (Mot. at 20); as such, the Court should view them as equally unfounded as Butterfly's complaints about the claimed "body."

### 8.    The contentions regarding the Doctrine of Equivalents (DOE) comply with LPR 3.1

Butterfly incorrectly alleges that Sonosite "includes boilerplate DOE allegations throughout its infringement contentions" and that these are insufficient. For support of this allegation, Butterfly in its brief largely only cites the *cover page* of each infringement chart. Yet

in the claim charts themselves, and in instances in which Sonosite had sufficient information, Sonosite explains why the accused products satisfy the function-way-result test for particular claim elements under the DOE. An example of such an explanation follows:

> However, to the extent this claim element is not literally present in or performed by the accused instrumentality, the claim element is satisfied under the doctrine of equivalents because the accused instrumentality performs substantially the ***same function (e.g., the Butterfly IQ application has graphical tools)***, in substantially the ***same way (e.g selectively activated by the user)***, and achieves substantially the ***same result as the claimed subject matter (e.g., the Butterfly IQ application has graphical tools selectively activated by the user in a control area)***. In addition, the doctrine of equivalents is satisfied because any difference between such claim element and the accused instrumentality is insubstantial.

*See e.g.*, Ex. 12 ('985 Infr. Contentions) at 10-11; *see also id.* at 13, 16, 17, 18, 20, 22, 24; Ex. 13 ('168 Infr. Contentions) at 6, 10, 11, 13, 15, 21, 23, 25, 26; Ex. 14 ('108 Infr. Contentions) at 9, 25; Ex. 15 ('822 Infr. Contentions) at 11, 13, 16, 20, 24, 39, 40, 43, 51); Ex. 16 ('981 Infr. Contentions) at 8-9; Ex. 17 ('050 Infr. Contentions) at 5, 7; Ex. 11 ('157 Infr. Contentions) at 5, 7, 18-19, 26, 28, 45-46, 56, 58, 70, 79, 81, 101, 114, 119, 121. Accordingly, Butterfly's complaints are baseless.

## V.    Conclusion

Butterfly's motion should be denied.

20

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

Jeremy A. Tigan (#5239)
1201 North Market Street
Robert L. Maier
Jennifer C. Tempesta
Margaret M. Welsh
Pallavi Mathur
Eric J. Faragi
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112
(212) 408-2500

P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Plaintiff FUJIFILM Sonosite, Inc.*

April 21, 2023

21

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 21, 2023, upon the following in the manner indicated:

Brian E. Farnan, Esquire                          *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Butterfly Network, Inc.*

Steven D. Maslowski, Esquire                      *VIA ELECTRONIC MAIL*
Jason Weil, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
1735 Market Street, 12th Floor
Philadelphia, PA 19103
*Attorneys for Defendant Butterfly Network, Inc.*

Paul D. Tripodi II, Esquire                       *VIA ELECTRONIC MAIL*
Clark Gordon, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
4 Park Plaza, Suite 1900
Irvine, CA  92614
*Attorneys for Defendant Butterfly Network, Inc.*

C. Brandon Rash                                   *VIA ELECTRONIC MAIL*
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C.  20006
*Attorneys for Defendant Butterfly Network, Inc.*

Brooks J. Kenyon                                  *VIA ELECTRONIC MAIL*
Megan R. Mahoney
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower, 44th Floor
New York, NY  10036-6745
*Attorneys for Defendant Butterfly Network, Inc.*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)