**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FUJIFILM SONOSITE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:22-cv-00309-JPM |
| | ) | |
| BUTTERFLY NETWORK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS

Before the Court is Defendant Butterfly Network, Inc.'s ("Butterfly") Partial Motion to Dismiss and accompanying Opening Brief, both filed on October 5, 2022. (ECF Nos. 32, 33.) Plaintiff FUJIFILM Sonosite, Inc. ("Fujifilm[1]") filed an Answering Brief in Opposition on November 2, 2022. (ECF No. 42.) Butterfly filed a Reply on November 16, 2022. (ECF No. 47.) For the reasons discussed below, the motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background

This is an action under United States patent law, 35 U.S.C. §§ 100 *et seq*. Fujifilm alleges that Butterfly's iQ and iQ+ products, and the carrying case and software accompanying these devices, infringe thirty claims across seven of its patents relating to ultrasound imaging technology, specifically Point of Care Ultrasound Systems ("POCUS")[2]. (ECF No. 21.)

---

[1] Plaintiff has variously referred to itself as "FUJIFILM," "Fujifilm," and "Sonosite" throughout the progression of this case. (See generally the docket.) For the purposes of consistency, the Court will use "Fujifilm" because this is how Plaintiff referred to itself in the briefings for the Instant Motion. (ECF No. 42.)

[2] These devices can be further characterized as portable ultrasound imaging devices and systems that can be brought to patients outside of a standard hospital or clinical setting.

Specifically, Fujifilm alleges that Butterfly infringes U.S. Patent No. 6,901,157 ("the '157 Patent"), U.S. Patent No. 9,538,985 ("the '985 Patent"), U.S. Patent No. 7,867,168 ("the '168 Patent"), U.S. Patent No. 7,169,108 ("the '108 Patent"), U.S. Patent No. 8,861,822 ("the '822 Patent"), U.S. Patent No. 8,360,981 ("the '981 Patent"), and U.S. Patent No. 8,128,050 ("the '050 Patent") (collectively the "patents-in-suit" or the "asserted patents").  (Id. ¶ 2.)  Fujifilm alleges direct infringement for all seven patents, and further alleges indirect infringement (induced and/or contributory) for six[3] of the seven patents. (Id.)  Fujifilm alleges that infringement of all seven patents was willful, and requests enhanced damages under 35 U.S.C. § 284.  (Id. ¶¶ 81, 110, 137, 155, 187, 215, 226.)

### B.   Procedural Background

Fujifilm filed its original Complaint accusing Butterfly of infringing its patents on March 9, 2022.  (ECF No. 1.)  Butterfly filed a first Motion to Dismiss and accompanying Opening Brief on August 8, 2022.  (ECF Nos. 11, 12.)  Fujifilm filed its First Amended Complaint on September 7, 2022.  (ECF No. 21.)  The Court Denied as Moot the first Motion to Dismiss in light of the First Amended Complaint on September 15, 2022.  (ECF No. 25.)

Butterfly filed the Instant Motion to Dismiss and accompanying Opening Brief on October 5, 2022.  (ECF Nos. 32, 33.)  Fujifilm filed a Response in Opposition on November 2, 2022.  (ECF No. 42.)  Butterfly filed a Reply on November 16, 2022.  (ECF No. 47.)

Fujifilm filed a Letter Requesting Oral Argument on the Instant Motion on November 17, 2022.  (ECF No. 48.)  Having reviewed the full record, the Court finds that the Instant Motion can be resolved without a hearing.

---

[3] FUJIFILM has not alleged indirect infringement for the '050 Patent.  (ECF No. 21 ¶ 217–227.)

## II.     LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555).  A complainant must plead facts sufficient to show that a claim has "substantive plausibility."  Id. at 347.  That plausibility must be found on the face of the complaint, which may include exhibits attached to the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006) (citing Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993)).

## III.    ANALYSIS

Butterfly puts forth three arguments for why portions of the Complaint should be dismissed.  (See generally ECF No. 33.)  First, Butterfly argues that the claims relating to the '157 Patent and the '985 Patent should be dismissed because the patents claim patent ineligible subject matter.  (Id. at PageID 887–98.)  Second, Butterfly argues that Fujifilm's claim relating to the '981 Patent should be dismissed because Fujifilm has failed to plead facts sufficient to plausibly allege that the accused products contain each of the limitations found in the asserted claims.  (Id. at PageID 898–902.)  Third, Butterfly argues that Fujifilm's claims alleging willful infringement should be dismissed because Fujifilm has failed to allege facts from which it could be plausibly inferred that the alleged infringement was willful.  (Id. at PageID 902–04.)

### A.   Patent Ineligible Subject Matter (<u>Alice</u>/<u>Mayo</u>)

Butterfly argues that the claims of the '157 Patent and the '985 Patent are invalid because the patents claim subject matter that is patent ineligible.  (ECF No. 33 at PageID 887.)  Butterfly argues that both the '157 Patent and the '985 Patent are patent ineligible because they each claim an abstract idea unaccompanied by an inventive concept.  (<u>Id.</u> at PageID 887–98.)

An inventor may obtain a patent for the invention or discovery of "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  An invention or discovery must fall under one of these categories and comply with all other patentability requirements to be patentable.  <u>Bilski v. Kappos</u>, 561 U.S. 593, 601–02 (2010).  However, the Supreme Court "has long held that this provision contains an important implicit exception. '[L]aws of nature, natural phenomena, and abstract ideas' are not patentable."  <u>Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.</u>, 566 U.S. 66, 70 (2012) (quoting <u>Diamond v. Diehr</u>, 450 U.S. 175, 185 (1981)). Despite the unpatentability of these categories standing alone, certain applications of these concepts may be patentable.  <u>Roche Molecular Sys, Inc. v. CEPHEID</u>, 905 F.3d 1363, 1368 (Fed. Cir. 2018).  "The Supreme Court has established [the <u>Alice</u>/<u>Mayo</u>] two-step framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." <u>Id.</u>; <u>Mayo</u>, 566 U.S. 66; <u>Alice Corp. Pty. Ltd. v. CLS Bank Intern.</u>, 573 U.S. 208 (2014).

The Federal Circuit has summarized the application of the <u>Alice</u>/<u>Mayo</u> two-step framework as follows:

> Under the <u>Alice</u>/<u>Mayo</u> two-step framework, we first "determine whether the claims at issue are *directed to* one of those patent-ineligible concepts." [<u>Alice</u>, 573 U.S. at 218.] (emphasis added); <u>see also</u> <u>Enfish, LLC v. Microsoft Corp.</u>, 822 F.3d 1327, 1335 (Fed. Cir. 2016). "[T]he 'directed to' inquiry applies a stage-one filter to

4

claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" Enfish, 822 F.3d at 1335 (quoting Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015)). At step one, "it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1050 (Fed. Cir. 2016).

If a claim is directed to one of those patent-ineligible concepts, we move to step two of the Alice/Mayo inquiry to "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." Alice, [573 U.S. at 221] (quoting Mayo, 566 U.S. at 72–73, 78, 132 S.Ct. 1289). At step two, there must be a further inventive concept to take the claim into the realm of patent-eligibility. Id. For claims that encompass natural phenomena, the method steps are the "additional features that must be new and useful." Ariosa Diagnostics, Inc. v. Sequenom, Inc., 788 F.3d 1371, 1377 (Fed. Cir. 2015); see also Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1376 (Fed. Cir. 2016).

Roche, 905 F.3d at 1368–69.

"The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016.)  In many cases, it is difficult to determine the precise definition of an "abstract idea," and the Federal Circuit has "acknowledged that 'precision has been elusive in defining an all-purpose boundary between the abstract and the concrete.'" Id. at 1258 (quoting Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015)).  The Federal Circuit has held that "a broad and familiar concept . . . that is untethered to any specific or concrete way of implementing it" is an abstract idea.  Id.  Courts have found that economic practices, as well as "well-understood, routine, conventional activity previously engaged in by researchers in the field," are abstract ideas. Bilski, 561 U.S. at 611 (holding that hedging as a "fundamental economic practice" was an abstract idea); Mayo, 566 U.S. 66 (holding that doctors adjusting medication dosages based on the level of metabolites in a patient's blood was an abstract idea).

5

i.      *The '157 Patent*

The '157 Patent describes an "ultrasonic diagnostic apparatus in which the optimum transmission/reception conditions and image processing conditions can be easily set for each body part" to be inspected.  (The '157 Patent, abstract.)  The '157 Patent describes two embodiments, each of which is comprised of: 1) an ultrasonic transmitting and receiving unit, 2) an image processing unit, 3) an information input unit, 4) a parameter memory unit, 5) a control unit, and 6) a display unit.  (See, e.g., the '157 Patent, cl. 1.)  The two described embodiments have an identical construction except that the second embodiment includes a region setting unit attached to the control unit that is not present in the first embodiment.  (The '157 Patent, figs. 1, 6; the '157 Patent col. 11, ln. 1–13.)

Butterfly argues that the '157 Patent claims are directed to the abstract idea of associating data with an identifier for later read out and adds no inventive concept.  (Id. at PageID 889–892.) Butterfly argues that Claim 1 of the '157 Patent is a representative claim, and that the other claims "add only well-known features related to that data and are substantially similar to claim 1."  (Id. at PageID 888–89).

In Response, Fujifilm argues that neither claim 1 in the '157 Patent nor claim 1 in the '985 Patent are representative of all asserted claims.  (ECF No. 42 at PageID 940–45, 950–51.)  Fujifilm argues that the '157 Patent is not simply directed to the abstract idea of associating data with an identifier for later read out, but is instead "directed to how an improved ultrasonic diagnostic system can combine image processing and control processes in an unconventional way by 'improving the image quality for a specific body part in a more efficient manner so that operators may accurately and efficiently diagnose the medical condition.'" (Id. at PageID 945.)

In Reply, Butterfly argues that the '157 Patent claims a device with "a way to 'easily set' parameters that were previously inputted manually."  (ECF No. 47 at PageID 1167.)  Butterfly argues that Claim 1 is representative because the '157 Patent "repeatedly lumps different generic categories of parameters together under the same umbrella for use in the same abstract way set forth in claim 1."  (Id.)  Butterfly argues that the '157 Patent essentially claims the concept of labelling a parameter set with an identifier, and then allowing the user to later utilize that parameter set by inputting the label.  (Id. at PageID 1168.)  Butterfly argues that this concept "is no different from a librarian using a call system to locate a book." (Id.)  Butterfly argues that while Fujifilm points to additional issues that the '157 Patent addresses other than just the manual inputting of parameters, the claims themselves do not have limitations relating to these additional issues.  (Id. at PageID 1169.)  Butterfly further argues that the '157 Patent does not claim "something more," and that there is no specific claimed technical solution that is used to accomplish the labelling and re-calling of the parameters.  (Id. at PageID 1170.)

All of the asserted claims of the '157 Patent are apparatus claims, which claim ultrasonic diagnostic apparatuses.  (The '157 Patent, claims.)  Both apparatus and method claims may be found to be unpatentable under the Alice/Mayo framework.  In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607 (Fed. Cir. 2016) (Finding that a patent containing both method and apparatus claims was unpatentable as being directed to an abstract idea following application of the Alice/Mayo framework.)  However, a review of the case law shows that the majority of cases in which a patent is found to be unpatentable as being directed to an abstract idea involve process or method claims, and only a small number involve machine or apparatus claims.  Elizabeth D. Lauzon, Patentability Under 35 U.S.C.A. § 101 Which Excludes Laws of Nature, Physical Phenomena, and Abstract Ideas, 5 A.L.R. Fed. 3d Art. 4, §§ 9, 14, 16, 21 (2015) (collecting cases).

Automation of a task that was previously performed by humans does not automatically mean that a claimed method or apparatus is necessarily directed to an abstract idea.  EcoServices, LLC v. Certified Aviation Servs., LLC, 830 F. App'x 634, 643 (Fed. Cir. 2020) ("That the claimed system achieves automation of a task previously performed by humans, however, does not mean the claimed system is necessarily directed to an abstract idea.").  Inventions "that automate tasks that humans are capable of performing are patent eligible if properly claimed," and patents claiming a specific combination of features that result in a technical improvement is one way that such invention might be claimed.  McRo, Inc. v. Bandai Namco Games America Inc., 837 F.3d 1299, 1313 (Fed. Cir. 2016); Id. at 643–45 (holding that patent claims "directed to a specific combination of a type of washing unit, information detector, and control unit, configured in a certain way to create technical improvements to systems for washing jet engines . . . provide examples of such proper claiming" and were not unpatentable as an abstract idea.).

Upon a review of the asserted claims of the '157 Patent under the first step of the Alice/Mayo framework, the Court finds that the '157 Patent is not "directed to" an abstract idea. Alice, 573 U.S. at 218.  The '157 Patent does not merely claim a device with the purpose of setting and recalling parameters, but instead is "directed to a specific combination" of different components and units that are "configured in a certain way to create technical improvements to systems" for ultrasonic imaging.  EcoServices, 830 F. App'x at 643.  While one aspect of the system involves storing and recalling parameters, the claimed invention is not directed to this idea, and such storage and retrieval of parameters is only one part of the overall claimed invention.  (See the '157 Patent.)  The various components that make up the claimed apparatuses each perform various functions that, when arranged together to form a system, operate to carry out functions, including: creating and receiving reflected ultrasonic waves; processing image data based on

specified parameters; inputting, storing, and recalling data and parameters; and displaying the final processed image.  (E.g., the '157 Patent, cl. 1.)

While the abstract idea of storing and retrieving parameters is one aspect of the '157 Patent claims, it would be inaccurate to say that any of the asserted claims have a "character as a whole" that is directed to this idea.  Affinity Labs, 838 F.3d at 1258.  While the '157 Patent certainly makes use of this abstract idea as one part of its operation, "an invention is not rendered ineligible for patent simply because it involves an abstract concept."  Alice, 573 U.S. at 217; see also Mayo, 566 U.S. at 71 ("[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas").

Because the Court finds that the asserted claims of the '157 Patent are not directed to unpatentable subject matter, it is not necessary to undertake an analysis under the second step of the Alice/Mayo two-step framework.  When considered as a whole, and in light of the specification, the asserted claims of the '157 Patent are not directed to an abstract idea and are therefore **NOT INVALID** as claiming patent-ineligible subject matter.

ii.    *The '985 Patent*

The '985 Patent describes a "portable ultrasound system having an enhanced user interface." (The '985 Patent, abstract.)  The '985 Patent describes multiple different embodiments, with one described embodiment being composed of an ultrasound transducer device/wand connected to a hand-held base unit.  (Id. col. 2, ln. 11–23, fig. 1A.)  The claims primarily concern the base unit and its ability to display, annotate, and modify the image using a touchscreen.  (see the '985 Patent, claims.)  The first independent claim of the '985 Patent claims a hand-held base unit comprising a touchscreen display and a programmable processor used to produce and manipulate an image on the touchscreen.  (The '985 Patent, cl. 1.)  The second independent claim

claims a hand-held ultrasound system comprising a housing with a touchscreen display, one or more processors, and memory storage. (The '985 Patent, cl. 6.) The dependent claims primarily claim additional graphical tools, layouts for these graphical tools, capabilities of the processor, and methods for a user to interact with and make selections on the touchscreen. (See id., claims.)

Butterfly argues that the '985 Patent covers the abstract idea of annotating an image, and adds no inventive concept. (Id. at PageID 892–95.) Butterfly also asserts that Claim 1 of the '985 Patent is a representative claim. (Id. at PageID 892–93.)

In Response, Fujifilm argues that the '985 Patent is not simply directed to the abstract idea of annotating an image, but instead that it is "directed to improved handheld portable ultrasound systems." (Id. at PageID 951.)

In Reply, Butterfly reiterates its argument that claim 1 is directed to the abstract idea of annotating an image, and that it is representative of the other claims. (ECF No. 57 at PageID 1171.) Butterfly argues that the claims of the '985 Patent are directed to the abstract idea of annotating an image using generic hardware, and that this abstract idea "does not improve computers or technology." (Id.)

Upon a review of the '985 Patent under the first step of the Alice/Mayo framework, the Court finds that the '985 Patent is not "directed to" an abstract idea. Alice, 573 U.S. at 218. The claims primarily relate to an improved user interface for use with an ultrasound system. (The '985 Patent.) The claims at issue specifically describe a user interface in which a user can, with a single hand, use their thumb to select various graphical tools and attributes of graphical tools that can be overlaid on the image obtained from an ultrasound scan. (The '985 Patent, cls. 1–3.)

Whether a patent claiming a user interface is patentable or is instead directed to an unpatentable abstract idea is a determination that is dependent on the specific claim at issue. Data

Engine Techs. LLC v. Google LLC, 906 F.3d 999 (Fed. Cir. 2018) (holding that certain patent claims relating to user interfaces were directed to an unpatentable abstract idea, but holding that others were not directed to an unpatentable abstract idea).  An important consideration in drawing this distinction might be whether the claims are directed to an improved interface that allows users to more quickly access or manipulate data, thereby improving the efficient functioning of the system.  Id. at 1009.

A claim for a user interface is not an abstract idea if it is "not merely directed to displaying information on a graphical user interface, but rather 'require[s] a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure that is addressed to and resolves a specifically identified problem in the prior state of the art.'"  Id. at 1009–10 (quoting Trading Techs. Int'l, Inc. v. CQG, INC., 675 F. App'x 1001 (Fed. Cir. 2017)).  In contrast, a user interface may be directed to an abstract idea if it is "directed at something a bit more general" and does not recite a specific implementation of the user interface.  Id. at 1012.

The '985 Patent describes a specific user interface with features that accomplish the goal of improving the efficient functioning of the ultrasound system.  See Id. at 1009.  Claim 1 describes a system that has a touchscreen interface that can be held in one hand and manipulated by the user's thumb.  (The '985 Patent, cl. 1).  Claim 1 also describes how the user-selected tools can be overlaid on the ultrasound image during operation.  (Id.)  Claim 2 describes additional specific graphical tools that would improve the operation of a medical ultrasound system, such as a pictograph and the ability to "select an attribute indicative of a region of the human anatomy." (Id., cl. 2.)  Claim 3 further describes how the interface may be configured so that a user may use a single finger to navigate through control areas, select specific graphical tools, and overlay them

11

on the ultrasound image.  (<u>Id.</u>, cl. 2.)

This specifically described functionality rises above the level of a general recitation of image annotation, and instead "is addressed to and resolves a specifically identified problem in the prior state of the art."  <u>Data Engine</u>, 906 F.3d at 1010.  The '985 Patent specification describes one embodiment in which a user uses one hand to operate the transducer wand, while simultaneously using the other hand to carry and operate the base unit.  (The '985 Patent col. 2 ln. 65 – col. 3 ln 1.)  In other embodiments, the controller may be worn on the user with a harness, belt, or other wearable feature that allows the user to operate the system while simultaneously carrying it on their person.  (<u>Id.</u> col. 3 ln. 5–9.)  A common feature throughout the specification of each described embodiment is one-handed operation of the touchscreen display since operation of the transducer wand requires the use of an operator's other hand.  (<u>See</u> the '985 Patent.)  The patent claims each further the goal of efficient and accurate one-handed operation of the device, and recite specific and particular manners of navigating the control areas that improve the efficient functioning of the ultrasound system.  <u>Data Engine</u>, 906 F.3d at 1009.

Because the Court finds that the asserted claims of the '157 Patent is not directed to unpatentable subject matter, it is not necessary to undertake an analysis under the second step of the <u>Alice</u>/<u>Mayo</u> two-step framework.  When considered as a whole, and in light of the specification, claims 1–3 of the '985 Patent are not directed to an abstract idea and are **NOT INVALID** as claiming patent-ineligible subject matter.

### B.      Infringement of '981 Patent

*iii.    Direct Infringement*

Butterfly argues that Fujifilm's Amended Complaint fails to allege direct infringement because it "does not explain how or why internal, non-public, unidentified circuitry in third-party smartphones" meets several claim limitations present in the '981 Patent. (ECF No. 33 at PageID 898). Butterfly argues that because Fujifilm has failed to allege direct infringement, its indirect infringement claims must also fail. (Id.) Specifically, Butterfly alleges that Fujifilm fails to allege that the accused products contain the display, adjustment circuit, and control unit limitations of claim 1 of the '981 Patent. (Id. at PageID 899–901.) Butterfly argues that Fujifilm's complaint "(1) parrots or repackages the claim language, and (2) identifies generic features untethered to the claim language or the accused products, with no facts to show why these features help render it plausible that the above limitations are met." (Id. at PageID 899.) Butterfly additionally argues that it has no knowledge or ability to find out how the internal display circuitry of the smartphones that form one part of the accused products operate, because the smartphones are made by third parties. (Id. at PageID 901.) Butterfly argues that Fujifilm's "claims for induced and contributory infringement of the '981 Patent should be dismissed for the additional reason that Fuji[film] has not alleged any facts that plausibly suggest Butterfly had the required knowledge that its customers' acts constitute infringement." (Id.)

In Response, Fujifilm argues that the "First Amended Complaint sufficiently pleads infringement of the '981 Patent." (ECF No. 42 at PageID 954.) Fujifilm argues that "the Complaint and attached claim chart for the '981 Patent has not only shown which component is alleged to infringe each element of the assert claims but also demonstrates how each element is satisfied, going well beyond the requisite pleading requirements." (Id. at PageID 955.) Fujifilm

argues that the Amended Complaint includes "detailed information on Defendant's knowledge of the asserted patent and of mobile devices" sufficient to satisfy the pleading requirements.  (Id.)

In Reply, Butterfly argues that Fujifilm only points to its allegation that the smartphones have a control unit, but fails to address the "display" or "adjustment circuit" limitations.  (ECF No. 47 at PageID 1174.)  Butterfly further argues that Fujifilm has failed to plead indirect infringement, and highlights that Fujifilm admits that both parties lack information to determine the existence of infringement before discovery.  (Id. at PageID 1175.)

The Amended Complaint contains sufficient allegations and facts sufficient to show that Fujifilm's claims have "substantive plausibility." Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555).  The Amended Complaint and the claim chart submitted attached to the Amended Complaint provide sufficient detail to support Fujifilm's allegations regarding each claim limitation of the '981 Patent at issue.  (ECF No. 21 ¶¶ 189–216; ECF No. 21-1 at PageID 677–94.)  The Amended Complaint and claim chart specifically allege details sufficient to support the display, adjustment circuit, and control unit limitations.

The claims chart alleges that "[t]he Butterfly iQ/iQ+ POCUS system includes mobile devices compatible with the Butterfly iQ/iQ+ probe having organic light-emitting diode ("OLED") displays, including active-matrix organic light-emitting diode VRR ("AMOLED") displays." (ECF No. 21-1 at PageID 682.)  The claims chart further alleges that "[a]t least the most recent iPhone (iPhone 13), the Samsung Galaxy S21 Ultra, and the Google Pixel 6 Pro use VRR OLED or AMOLED screens" and provides links to web pages providing additional information regarding the specifications of each of these phones and their displays.  (Id. at PageID 683.)

The claims chart alleges that "[t]he display unit of a VRR OLED or AMOLED mobile device must include an adjustment circuit for adjusting a ratio of the blanking period to an image

14

display period within one field period in said display." (Id. at PageID 684.)  The claims chart further alleges that the "OLED display systems in compatible smartphone devices comprise at least an AMOLED display driver and a display controller" and that "[s]uch a circuit may be tasked to adjust the blanking period ratio, for example, to create a desired brightness of the display." (Id.)

The claims chart alleges that "ultrasound imaging frame rates vary based on selection of certain preset modes within the iQ/iQ+ POCUS system" and that "the Butterfly iQ/iQ+ POCUS system must use a control unit for controlling the adjustment circuit to adjust the ratio of the blanking period to the image display period within one field period in the mobile device display unit according to at least one of a selected preset and a frame rate of the image signals generated by the Butterfly app[lication]." (Id. at PageID 686.)  The claims chart further alleges that the Accused Product software provides features to allow an end user to adjust brightness of an ultrasound image.  (Id. at PageID 690.)

The Federal Circuit has held Patent infringement allegations to have been sufficiently pled when the complaint "specifically identified the . . . accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet 'each and every element of at least one claim of the [Asserted] Patent, either literally or equivalently.'" Disc Disease Solutions Inc. v. VGH Solutions, Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018).  A factor that Courts consider when determining whether the complaint is sufficiently pled is whether the "disclosures and allegations are enough to provide [the defendant] fair notice of infringement of the asserted patents." Id.

Fujifilm's disclosures and allegations provide significantly more information than simply identifying the Accused Products and alleging that they meet each claim limitation.  Fujifilm's allegations and the underlying asserted facts are sufficient to show that its claims have "substantive

plausibility." Davis, 765 F.3d at 241 (quoting Twombly, 550 U.S. at 555).  The Complaint points to specific components present in specific makes and models of mobile devices that form part of the Accused Products and are alleged to meet the claim limitations at issue.  (ECF No. 21-1 at PageID 677–94.)  For each of these components, the Complaint describes their function, alleges how they meet the claim limitations, and provides charts and references to outside sources that provide additional information relating to the technology.  (ECF No. 21 ¶¶ 189–216, 21-1 at PageID 677–94.)  These allegations are sufficiently pled and are sufficient to provide Butterfly with fair notice of infringement of the Asserted Patents.

Accepting all of Fujifilm's allegations as true, Fujifilm has made sufficient factual allegations to demonstrate a substantive plausibility that Buterfly may be liable for direct infringement of the '981 Patent.  Accordingly, dismissal of Fujifilm's direct infringement claims relating to the '981 Patent is inappropriate at this time.

    *iv.*    *Induced and Contributory Infringement*

To succeed on a claim for induced or contributory infringement, a plaintiff must allege that the defendant had knowledge of the patent.  Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015) (noting that "liability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement'" and that "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.") (quoting Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011)).  A defendant acting with willful blindness of the existence of a patent is sufficient to establish knowledge of a patent for the purposes of induced and contributory infringement.  Global-Tech, 563 U.S. at 765–68 (holding that the same knowledge of a patent is needed for induced infringement and contributory infringement, and that willful blindness is sufficient to

demonstrate such knowledge.)  To prove knowledge by evidence of willful blindness, the patentee must show that (1) the defendant subjectively believes that there is a high probability that a fact exists and (2) the defendant must have taken deliberate actions to avoid learning of that fact.  Id. at 2070.

Fujifilm alleges that Butterfly "had knowledge or was willfully blind to the '981 Patent prior to the filing of the original Complaint, and had knowledge or was willfully blind to the fact that its conduct constituted, induced, or contributed to infringement of the '981 Patent prior to the filing of the original Complaint."  (ECF No. 21 ¶ 215.)  Fujifilm alleges that Butterfly was made aware of the patent no later than March 9, 2022, the same day that the instant action was filed, through a letter that Fujifilm sent to Butterfly.  (Id. ¶ 202.)  Fujifilm further alleges that Butterfly was willfully blind to the existence of the '981 Patent because Butterfly was "aware of numerous patents owned by Plaintiff, including multiple of the Asserted Patents, such that a non-exhaustive patent search would have made the Defendant aware of all of the Asserted Patents" and that Butterfly was aware of the fact that Fujifilm is a leader in the market and a direct competitor and thus either had actual knowledge of Fujifilm's patents or deliberately took actions to avoid learning of them.  (Id.)

The allegations and assertions in the complaint are sufficient to show a substantive plausibility that Butterfly had actual knowledge of or was willfully blind to the existence and infringement of the '981 Patent.  Fujifilm has alleged both that Butterfly had actual knowledge of the existence of '981 Patent no later than March 9, 2022 and that, given the structure of the market and the Parties' relationship as direct competitors, Butterfly would have to have been willfully blind to not have been aware of the existence of the '981 Patent.  Accepting all of Fujifilm's allegations as true, Fujifilm has made sufficient factual allegations to demonstrate a substantive

plausibility that Buterfly had actual knowledge and/or was willfully blind to the existence of the '981 Patent.  See Twombly, 550 U.S. 544.

Contributory and induced infringement each further require that an accused infringer have knowledge that the relevant acts constitute patent infringement.  Global-Tech Appliances, Inc. v. SEB S.A, 563 U.S. 754, 766 (2011) ("Accordingly, we now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476 (1964) ("On this question a majority of the Court is of the view that [contributory infringement under] § 271(c) does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing.").

Fujifilm has made disclosures and allegations sufficient to show a substantive plausibility that Butterfly had knowledge that its acts constituted contributory or induced infringement.  The Complaint alleges that Butterfly is liable for induced infringement because it induced its customers to use the Accused Products to infringe the '981 Patent, and has provided "training, demonstrations and user manuals directing [Butterfly's] customers to infringe."  (ECF No. 21 ¶¶ 206–07.)  The Complaint further alleges that Butterfly is liable for contributory infringement because it has sold or offered to sell the Accused Products within the United States, and that Butterfly knew that the Accused Products are "especially made and/or especially adapted for use in infringement of the '981 Patent."  (Id. ¶¶ 208–09.)

Accepting all of Fujifilm's allegations as true, Fujifilm has made sufficient factual allegations to demonstrate a substantive plausibility that Butterfly may be liable for contributory and/or induced infringement of the '981 Patent.  Accordingly, dismissal of Fujifilm's contributory and indirect infringement claims relating to the '981 Patent is inappropriate at this time.

## C.      Enhanced Damages Under Section 284 for Willful Infringement

Butterfly argues that all of Fujifilm's willfulness-based enhanced damages should be dismissed as they relate to all asserted patents "because the [A]mended [C]omplaint fails to allege facts plausibly showing that Butterfly had knowledge of the patents and alleged infringement before this suit."  (ECF No. 33 at PageID 902.)  Butterfly argues that Fujifilm has failed "to sufficiently plead that Butterfly had pre-suit knowledge of infringement of any asserted patent." (Id. at PageID 903.)  Butterfly further argues that Fujifilm's allegations that the Parties are competitors in the market and that Butterfly was aware that Fujifilm had relevant patents is insufficient to allege knowledge of infringement.  (Id. at PageID 904.)  Butterfly also argues that Fujifilm has not sufficiently alleged that Butterfly was willfully blind to the asserted patents, because the Complaint fails to identify any deliberate actions that Butterfly allegedly took to avoid knowledge of the patents.  (Id.)

In Response, Fujifilm asserts that the Parties agree on the standard for pleading willful infringement, but that they disagree on whether Fujifilm's Amended Complaint meets this standard.  (ECF No. 42 at PageID 956.)  Fujifilm argues that it has plausibly alleged pre-suit willful infringement, and argues that the Amended Complaint asserted that Butterfly is a competitor in the marketplace and has also used Fujifilm's products "that display patent numbers to demonstrate their own products by comparison."  (Id. at PageID 957.)  In support of its arguments, Fujifilm has provided a table summarizing the Complaint's allegations relating to Butterfly's knowledge of the asserted patents and infringement prior to the date of the original complaint.  (Id. at PageID 943.) Fujifilm further argues that there is a "split of authority" in the District of Delaware as to whether post-suit knowledge, absent a showing of pre-suit knowledge, is sufficient to support an allegation of willful infringement.  (Id. at PageID 957.)  Fujifilm notes that the Federal Circuit has not directly

19

addressed this question.  (Id.)  Fujifilm "urges the Court to adopt the reasoning of many other decisions" that post-suit knowledge is sufficient for a showing of willful infringement, and argues that it has sufficiently alleged such post-suit willful infringement.  (Id.)

In Reply, Butterfly argues that while Fujifilm did make general allegations, these "generalized allegations are legally deficient" and "none of the relevant allegations plausibly show that Butterfly was sufficiently familiar with any Fuji[film] patent to have knowledge of infringement."  (ECF No. 47 at PageID 1175.)  Butterfly agrees with Fujifilm's assertion that "courts are split on whether a complaint alone may support post-suit willfulness," but urges the Court to adopt the position that a complaint cannot provide knowledge of post-suit infringement for the purposes of willful infringement.  (Id. at PageID 1176.)

35 U.S.C. § 284 "gives district courts the discretion to award enhanced damages against those guilty of patent infringement."  Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 110 (2016).  "[T]he court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  While enhanced damages may be used to punish a range of inappropriate conduct,

> in the vast majority of patent cases filed today, claims for enhanced damages are sought based on allegations of willful misconduct—so much so that, even though the words "willful" and "willfulness" do not appear in § 284, plaintiffs and courts more often than not describe claims for enhanced damages brought under § 284 as "willful infringement claims."

Deere & Co. v. AGCO Corp., 1:18-cv-00827-CFC-JLH, 2019 WL 668492, at *3 (D. Del. Feb. 19, 2019) (collecting cases).

"[T]he concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement" and may be shown by the "subjective willfulness of a patent infringer, . . . without

regard to whether his infringement was objectively reckless." <u>Eko Brands, LLC v. Adrian Rivera</u>

<u>Maynez Enterprises, Inc.</u>, 946 F.3d 1367, 1378 (quoting <u>Halo</u>, 579 U.S. at 105).

> [A] willful infringement-based claim for enhanced damages survives a motion to dismiss if it alleges facts from which it can be plausibly inferred that the party accused of infringement (1) had knowledge of or was willfully blind to the existence of the asserted patent and (2) had knowledge of or was willfully blind to the fact that the party's alleged conduct constituted, induced, or contributed to infringement of the asserted patent.

<u>Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.</u>, Civil Action No. 19-1239-CFC, 2020 WS

4365809, *5 (D. Del. July 30, 2020).

Fujifilm has alleged that Butterfly willfully infringed each of the asserted patents at issue

in the instant action.  (ECF No. 21 ¶¶ 81, 110, 137, 155, 187, 215, 226.)  As discussed in the above

analysis regarding infringement of the '981 Patent, Fujifilm has pled facts from which it can be

plausibly inferred that Butterfly knew of or was willfully blind to the existence of the '981 Patent

and knew or was willfully blind to the fact that its conduct amounted to infringement of the '981

Patent.  (<u>Supra</u> III.B. Infringement of '981 Patent.)  Fujifilm has pled similar facts regarding willful

infringement of each of the other asserted patents.  (ECF No. 42 at PageID 943 (table summarizing

Fujifilm's pleadings related to willful infringement).)  For some of the asserted patents, Fujifilm

has provided additional information in support of its allegations of willful infringement, including

details related to Butterfly citing certain asserted patents during prosecution of its own patents and

Butterfly's use of Fujifilm's products displaying the numbers of certain asserted patents.  (<u>Id.</u>)

Accepting all of Fujifilm's allegations as true, Fujifilm has made sufficient factual allegations to

demonstrate a substantive plausibility that Butterfly may have willfully infringed each of the asserted patents.  Accordingly, dismissal is inappropriate on this issue.

Because Fujifilm has sufficiently pled willful infringement based on pre-suit knowledge, at this time the Court will not address the Parties' disagreement as to whether post-suit knowledge is sufficient to support allegations of willful infringement.

## IV.    CONCLUSION

For the reasons discussed above, Butterfly's Motion to Dismiss (ECF No. 32) is **DENIED**.

**IT IS SO ORDERED**, this 6th day of June, 2023.

s/ Jon P. McCalla

JON P. McCALLA
UNITED STATES DISTRICT JUDGE